IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No.

|  |  |
|---|---|
| DARRON ANTONIO CARMON,<br><br>*Plaintiff*,<br><br>v.<br><br>THE TOWN OF WINTERVILLE, DONNIE GREENE and EMMANUEL ARMAOS, in their individual and official capacities,<br><br>*Defendants*. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED |

NOW COMES Plaintiff Darron Carmon, demanding a jury trial and alleging the following against the Defendants:

## I.     <u>INTRODUCTION</u>

1.      Nearly thirty years ago, Darron Carmon was wrongfully arrested, charged and convicted of a robbery that he did not commit.

2.      Mr. Carmon was sentenced to 40 years in prison.

3.      He served 8 years in prison and was released in 2001 for good behavior.

4.      Mr. Carmon's wrongful conviction, sentence and incarceration were directly caused by the acts of Defendants the Town of Winterville ("Town") and Winterville Police Department Officers ("WPD") Donnie Greene and Emmanuel Armaos.

5.      At the time of his arrest, Mr. Carmon was a 19-year-old college student and was employed at Skilled Creations a home for youth with mental or developmental disabilities.

6.      On October 29, 1993, WPD Officers Donnie Greene and Emmanuel Armaos responded to the scene of an alleged robbery—a Fresh Way convenience store.

7.      The alleged victim, Robert Thompson a Fresh Way cashier, gave a statement to Officers Greene and Armaos describing his assailant as a 6' black male with an afro haircut.

8.      Mr. Carmon was 5'6 with a short, cropped haircut.

9.      Officers Greene and Armaos—aware that Mr. Carmon did not match the description of the alleged perpetrator—intentionally fabricated Mr. Thompson's statement in an investigative reported provided to the District Attorney to match Mr. Carmon's height and hairstyle.

10.     Officers Greene and Armaos also took finger and palm print lifts from the Fresh Way store but failed to disclose them to Mr. Carmon, his defense counsel or the District Attorney.

11.     The finger and palm print lifts sat in a WPD evidence locker for 28 years until Mr. Carmon's post-conviction counsel requested his criminal file and discovered the suppressed prints.

12.     Mr. Carmon gave finger and palm print samples that were then analyzed by an expert and compared to the prints found at the scene of the alleged crime.

13.     Mr. Carmon was excluded as the source of the prints.

14.     On August 10, 2022, Superior Court Judge Marvin Blount signed a consent Motion for Appropriate Relief and order overturning Mr. Carmon's conviction. The motion and consent order stated in part, "[h]ad the exculpatory fingerprints been produced to the defense, there is a reasonable probability that—considering the single cross-racial identification, and the absence of any other physical evidence—the result of the trial would have been different."

2

15.     Plaintiff Darron Carmon brings this action for compensatory damages and punitive damages pursuant to North Carolina law, 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## II.    PARTIES

16.     Plaintiff Darron Carmon is a resident of Pitt County, North Carolina.

17.     Defendant the Town of Winterville ("Town") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Winterville Police Department ("WPD"). Employees of WPD are employees and agents of the Town, which bears legal responsibility under state law for the negligent acts and omissions of WPD's employees in the course of their employment. The Town is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

18.     Further, on information and belief, the Town of Winterville, at the time of Mr. Mr. Carmon's wrongful arrest and prosecution, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the Town and its agents for any judgment against it or its agents named in this action.

19.     All individual Defendant WPD officers sued herein are entitled under North Carolina law to indemnification by the Town of Winterville for any liability arising from conduct described herein.

20.     Officer Donnie Greene is a police officer formerly employed by the Winterville Police Department, being sued in his individual and official capacity.

3

21.     Officer Emmanuel Armaos is a police officer employed by the Winterville Police Department, being sued in his individual and official capacity.

### III.     JURISDICTION

22.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Plaintiff's claims arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

23.     Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

### IV.     VENUE

24.      Venue is proper in the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where Defendants reside and maintain their relevant places of business and where the actions complained of herein occurred.

### V.     FACTS

**The Alleged Robbery**

25.   On October 29, 1993, Mr. Carmon was 19 years old.

26.   That evening, around 9:30 p.m., Robert Thompson called the WPD and reported that he had been robbed in his capacity as a clerk at the Fresh Way convenience store on Mills Street in Winterville, NC ("Fresh Way").

27.   WPD Officers Donnie Greene and Emmanuel Armaos responded to Fresh Way.

4

28. Upon arriving at the store, Mr. Thompson, informed the officers that he was the victim of an armed robbery. He claimed that the assailant took $281.22 in U.S. Currency from the cash register.

29. Mr. Thompson claimed that he had been robbed by a black male with a handgun.

30. Mr. Thompson described the robber as 6' tall with a large afro-top haircut.

31. No surveillance video footage, no other eyewitness and no evidence of property damage or signs of disturbance indicative of a robbery were located by the WPD officers.

32. Officers Greene and Armaos took fingerprint and palmprint lifts from the Fresh Way store.

33. Mr. Thompson was the sole witness to the alleged robbery.

34. His account was uncorroborated by any witnesses or physical evidence.

35. Mr. Thompson was Caucasian.

36. Mr. Thompson claimed the alleged assailant was not someone he knew or recognized.

37. Officers Greene and Armaos provided Mr. Thompson with a mug shot book—consisting of pages of individual mug shot photos of black and white males of young and old ages—from which Mr. Thompson selected a photo of Mr. Carmon.

38. Mr. Carmon is African American.

39. Mr. Carmon is 5'6.

40. In 1993, at the time of the alleged robbery, Mr. Carmon had a short, cropped haircut.

41. On the morning of October 30, 1993, at approximately 4 a.m., Mr. Carmon was arrested and taken to the WPD.

42. His father, William Carmon, learned Darron Carmon had been arrested and immediately drove to the WPD.

5

43. At the WPD, Officers Greene and Armaos informed William Carmon, that Mr. Thompson had initially described the alleged robber as being 6' tall with a large afro-top haircut.

44. Officer Greene stated that Darron Carmon did not match the description given by Mr. Thompson.

45. Still, the officers charged Darron Carmon with taking $281.22 in U.S. Currency, while in possession of a firearm.

46. Neither the money alleged to have been stolen, nor any firearm, were found on Mr. Carmon or ever located.

**WPD Officers Fabricate Evidence Against Darron Carmon**

47. The following day, WPD Officer Donnie Greene drafted an incident report for the alleged robbery.

48. The WPD officers knew that armed solely with Mr. Thompson's faulty identification they lacked probable cause to charge Mr. Carmon.

49. In an attempt to manufacture probable cause, the officers fabricated key details in their investigative report, including:

   a. That Mr. Thompson stated that the individual who robbed him was approximately 5'8 and had a "short" haircut.

50. These fabricated allegations were provided to the Pitt County District's Attorney's Office.

51. In addition to these fabrications, Officers Greene and Armaos failed to inform the Pitt County DA that Mr. Thompson had stated—at the time they arrived at the Fresh Way—that the alleged robber was 6' tall and had an afro haircut.

6

**WPD Officers Suppress Exculpatory Fingerprint Evidence**

52. Officers Greene and Armaos knew that Mr. Carmon looked nothing like the description Mr. Thompson gave of the alleged robber (6 ft tall with an afro haircut), and that the finger and palm print evidence would exculpate him.

53. On October 31, 1993, the officers submitted an "investigative report" to the DA.

54. The investigative report included a section labeled "Documents and Tangible Evidence."

55. Officers Greene and Armaos did not indicate anywhere in the report that they had taken finger and palm print lifts from the Fresh Way.

56. The Officers never turned over the finger and palm print lifts to the DA.

57. Officers Greene and Armaos intentionally or recklessly withheld the finger and palm print lifts because they knew they would not match Darron Carmon.

**Trial and Sentencing**

58. Mr. Carmon refused to plead guilty because he was innocent.

59. On February 4, 1994, trial began in the *State v. Darron Carmon*.

60. When defense counsel made a *Brady* motion at the start of trial, he was informed by Clark Everett, the District Attorney, that no relevant material remained to be disclosed.

61. Robert Thompson, the Fresh Way clerk, testified that Mr. Carmon was the sole perpetrator of the robbery.

62. Mr. Thompson testified that other people were present at the gas pumps at the Winterville Fresh Way, but none of them claimed to have seen the alleged perpetrator.

63. The Defense presented one alibi witness, Earl Whichard.

64. Mr. Whichard testified that he was in Greenville with Mr. Carmon from 7 p.m. to approximately 10:30 p.m. on the night of the alleged robbery.

7

65. No fingerprint evidence was ever turned over to the defense or introduced at trial.

66. No surveillance video footage, no other eyewitnesses (despite other people being at the gas station), and no property damage or signs of a disturbance indicated that a robbery ever occurred, let alone that Mr. Carmon did it.

67. After a one-day trial, a jury sitting at the Pitt County Superior Court found Darron Carmon guilty of robbery with a firearm.

68. At sentencing, Judge Duke asked Mr. Carmon to apologize to his parents, who were sitting in the courtroom, for committing the robbery.

69. Because he is innocent, Mr. Carmon refused to apologize. Judge Duke sentenced Mr. Carmon to 40 years in prison, the maximum sentence allowable by law for a Class D felony.

**Darron Carmon's Family Hires an Investigator to Pursue His Innocence Claim**

70. After his conviction, Mr. Carmon continued to proclaim his innocence.

71. He immediately wrote to Governor Hunt seeking to overturn his conviction.

72. He also appealed his conviction to the North Carolina Court of Appeals.

73. The request to Governor Hunt and his appeal were both denied.

74. In 1996, Mr. Carmon's parents hired a private investigator named Carolyn Melvin to prove his innocence.

75. Mr. Carmon signed a release permitting Ms. Melvin to receive his entire criminal file from his trial attorney, Edward Wells.

76. Ms. Melvin was a retired police officer of the Farmville Police Department.

77. Ms. Melvin sought Mr. Carmon's full file from Mr. Wells.

78. Ms. Melvin received Mr. Wells file but it did not contain any finger or palm prints because they were never turned over to the defense.

79. Ms. Melvin also requested the full file from the WPD but did not receive the finger or palm prints.

80. Ms. Melvin never received the finger and palm print samples taken from the Fresh Way store on the night of the alleged robbery.

81. In 2000, Mr. Carmon's family hired an attorney, Milton Fitch, to investigate his case.

82. On information and belief, Mr. Fitch was also never provided with the finger or palm print lifts in the WPD file.

83. In 2001, after serving eight years in prison, Mr. Carmon was released early from prison because of his good behavior.

**Mr. Carmon Becomes a Community Leader in Greenville**

84. Since his release from prison in 2001, Mr. Carmon has been an outstanding member of society.

85. Over the past two decades, he has transformed the lives of many struggling children and families and has uplifted people across his community. Mr. Carmon currently works full time as a pastor at Rebuild Christian Church.

86. He is widely regarded as a leader across Pitt County and has founded or leads the following organizations:

   a. Rebuild Christian Center Church (which has lifted up the community in many ways including providing free meals and supplies to families in need during the COVID-19 pandemic);

9

b. Sikono Mentoring, a non-profit organization that provides father figures for children whose fathers are not active in their lives;

   c. Winning Without Violence, a non-profit gun awareness program created in collaboration with Cecil Hardy, a retired Greenville Police Department Captain;

   d. People Against Racism, a non-profit organized to fight systemic racism.

87. Mr. Carmon has also won numerous awards and accolades over the past decade, including:

   a. 2021 Hero of the Year Award, for service to the Pitt and Greene Community;

   b. 2019 Hero of the Year Award, for service to the Winterville Community;

   c. Excellence in Leadership Award for 2018 from Senate District 5;

   d. Excellence in Leadership Award for 2016 from Senate District 5;

   e. In 2015, the Mayor of Winterville declared the fourth Saturday of every April *Pastor Darron Antonio Carmon Day* for his community outreach work with at-risk youth, ex-offenders, and gang members;[1]

   f. Certificate of Appreciation from the North Carolina State Department of Correction in 2011 for providing volunteer services.

**Newly Discovered Exculpatory Fingerprint Evidence**

88. In 2020, Mr. Carmon retained post-conviction counsel.

89. On January 19, 2021, Mr. Carmon's post-conviction counsel made a public records request for the complete investigative file from the WPD.

---

[1] *Town names a day in honor of Local Pastor,* WITN (Apr. 8, 2018, 7:55 PM), https://www.witn.com/content/news/Town-names-a-day-in-honor-of-local-pastor-479100863.html#:~:text=Darron%20Carmon%20Day%20will%20be,last%20Saturday%20of%20the%20month.

90. Included among the materials produced by the WPD were photocopies of fingerprint and palmprint lifts taken by the WPD from the Fresh Way on Mill Street at 10 p.m. on the night of the alleged robbery.

91. On February 19, 2021, post-conviction counsel traveled to the WPD to scan and obtain a high-resolution copy of the original lift of the prints.

92. On Thursday, March 12, 2021, Mr. Carmon gave a palm and fingerprint sample for comparison purposes to the 1993 prints.

93. These, along with a high-resolution copy of the 1993 lifts, were sent to Glenn Langenburg, Ph.D., a certified latent print examiner.

94. Mr. Langenburg found "no correspondence" between the palm prints of Mr. Carmon and the palm print found at the scene of the alleged crime.

95. Mr. Langenburg *excluded* Mr. Carmon as the source of the prints found at the scene of the alleged crime.

96. Mr. Langenburg's conclusion was blind tested and confirmed by a second certified examiner, Ashley Tate. Ms. Tate reached the same conclusion as Mr. Langenburg, excluding Mr. Carmon as the source of the 1993 prints.

97. The fingerprints taken from the Fresh Way were never produced at trial.

98. In a recent interview, DA Clark Everett stated that if he had possessed any fingerprint evidence from the scene of the crime, he would have turned it over to the defense.

**Darron Carmon Files a Motion for Appropriate Relief**

99. Darron Carmon filed a Motion for Appropriate Relief in June 2021, alleging three primary claims:

a. the State failed to disclose exculpatory fingerprint evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and there is a reasonable probability that had this evidence been disclosed at trial, the jury would have returned a different verdict.

b. Mr. Carmon is factually innocent;

c. The sole evidence produced by the State—the uncorroborated eyewitness testimony of the alleged victim—was unreliable and obtained through suggestive means and may have caused the false identification of Mr. Carmon.

100. After reviewing the motion, the current Pitt DA, Faris Dixon, conducted an independent investigation of Mr. Carmon's claims.

101. DA Faris Dixon assigned an investigator to the case who spoke to witnesses and reviewed evidence.

102. DA Faris Dixon also submitted the newly discovered finger and palmprints to the North Carolina State Crime Lab for analysis.

103. The results of the analysis by the North Carolina State Crime Lab are that the prints cannot be attributed to Mr. Darron Carmon.

104. After completing his investigation, DA Faris Dixon consented to a Motion and Order overturning Mr. Carmon's conviction.

105. The consent motion and Order stated in pertinent part that:

a. As to Mr. Carmon's claim of innocence, "the defense has reinvestigated the matter and the State has also reinvestigated the matter with the States' new findings confirming for the most part the defendant's findings."

b. "Had the exculpatory fingerprints been produced to the defense, there is a 'reasonable probability' that—considering the single cross-racial identification,

12

and the absence of any other physical evidence—the result of the trial would have been different. *State v. Best,* 376 N.C. 340, 354, 852 S.E.3d 191, 198, 201 (2020) (overturning a conviction because of a 'reasonable probability' that the 'jury would have returned a different verdict' had the *Brady* evidence been disclosed to the defense)."

c. "After a review of all the Defendant's claims and governing case law, the State and the Defendant consent to the Defendant's MAR and agree that this Court should vacate the Defendant's conviction for Robbery with a Dangerous Weapon or grant other relief as the Court may deem just and proper."

106. On August 10, 2022, Superior Court Judge Marvin Blount signed the motion and Order overturning Mr. Carmon's conviction.

107. On August 12, 2022, DA Faris Dixon dismissed the robbery charge against Mr. Carmon.

## VI.    INJURIES AND DAMAGES

108. This action seeks damages on behalf of Plaintiff Darron Carmon for his loss of liberty, extraordinary emotional pain and suffering, and injuries to his person that Plaintiff was forced to endure as a consequence of Defendants' decidedly wrongful actions.

109. Plaintiff has suffered, and continues to suffer, severe and ongoing damages, specifically physical pain and injuries, serious psychological and emotional damage, and loss of quality of life.

110. The acts and omissions of Defendants entitle Plaintiff to compensatory and punitive damages.

13

# VII. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### 42 U.S.C § 1983 Violation of Plaintiff's Due Process Rights Under the Fourteenth Amendment

111. Plaintiff Darron Carmon repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

112. Officers Greene and Armaos are sued under this claim in their individual capacities.

113. Officers Greene and Armaos are sued for violating Mr. Carmon's rights under the Fourteenth Amendment and are liable for damages under 42 U.S.C § 1983.

114. Defendants failed to disclose exculpatory evidence to Mr. Carmon, his defense counsel, and the Pitt County District Attorney.

115. This included the failure to disclose finger and palm print lifts discovered from the scene of the alleged crime that did not match Mr. Carmon.

116. This also included the failure to disclose that Mr. Thompson identified the alleged robber as an individual of significantly different height and hair style than Mr. Carmon.

117. Defendants also fabricated inculpatory evidence, including but not limited to fabricating statements made by Mr. Thompson.

118. This includes the crucial fabrication of false evidence by Defendants that Mr. Thompson had identified an individual who matched the height and hair style of Mr. Carmon.

119. These failures were committed both in bad faith and in gross deviation from routine police conduct.

14

120. By engaging in this conduct, Defendants acted with deliberate and/or reckless indifference to Mr. Carmon's constitutional rights. Defendants could reasonably foresee that their conduct would result in Mr. Carmon's wrongful conviction and incarceration.

121. Defendants acted jointly in agreement to deprive Mr. Carmon of his constitutional rights. Each Defendant performed overt acts in furtherance of that agreement and in furtherance of their intent to deprive Mr. Carmon of his constitutional rights by failing to disclose exculpatory evidence, failing to disclose impeachment evidence against their sole eyewitness, manufacturing false evidence, making false representations to the DA and failing to intervene to prevent others' misconduct.

122. After Mr. Carmon filed a Motion for Appropriate Relief, Pitt DA Farris Dixon, reviewed the evidence and consented to a motion and order overturning Mr. Carmon's conviction, and he then dismissed the charge.

123. The consent motion and order stated in part, "[h]ad the exculpatory fingerprints been produced to the defense, there is a reasonable probability that—combined with Mr. Carmon's alibi witness, the single cross-racial identification, and the absence of any other physical evidence—the result of the trial would have been different."

124. Defendants' misconduct deprived Mr. Carmon of his liberty without due process of law, deprived him of his right to a fair trial and deprived him of his access to the courts, in violation of the Fourteenth Amendment to the United States Constitution.

125. As a direct and proximate result of Defendants' unlawful conduct, Mr. Carmon sustained the injuries and damages described above.

15

## SECOND CLAIM FOR RELIEF
### *Monell* Claim Under the Fourth and Fourteenth Amendments

126. Plaintiff Darron Carmon repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

127. The Town of Winterville, and Officers Greene and Armaos are sued under this claim in their official capacities.

128. The Town of Winterville and Officers Greene and Armaos are sued for violating Mr. Carmon's rights under the Fourth and Fourteenth Amendments and are liable for damages under 42 U.S.C § 1983.

129. Defendant Town of Winterville was at all times relevant to this Complaint responsible for the policies, practices and customs of the WPD.

130. As of 1993, the Town of Winterville had a practice and policy of failing to disclose exculpatory evidence.

131. This practice and policy is also evidence by Officer Greene's recent statement that the WPD had a policy at the time of not requiring all fingerprint evidence to be disclosed to the District Attorney.

132. This practice and policy is evidenced by Officers Greene and Armaos failure to disclose exculpatory evidence in this case.

133. As a direct result of Defendants' policies and customs related to their failure to disclose evidence, Mr. Carmon suffered the injuries described above.

# THIRD CLAIM FOR RELIEF
## Deprivation of Due Process and Access to the Courts in Violation of the First and Fourteenth Amendments under 42 U.S.C § 1983

134.  Plaintiff Darron Carmon repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

135.  The Town of Winterville and Officers Greene and Armaos are sued under this claim in their individual and official capacities.

136.  The Town of Winterville and Officers Greene and Armaos are sued for violating Mr. Carmon's rights under the First and Fourteenth Amendments and are liable for damages under 42 U.S.C § 1983.

137.  Defendants Greene and Armaos deprived Mr. Carmon of his constitutional right to due process of law and meaningful access to the courts by covering up and concealing from Mr. Carmon, prosecutors, and the courts, evidence that demonstrated Mr. Carmon's innocence.

138.  As a result of these Defendants' acts and omissions, Mr. Carmon was deprived of evidence that would have allowed him to successfully challenge his conviction through post-conviction remedies that were available to him, including but not limited to a Motion for Appropriate Relief based on new evidence under N.C. Gen. Stat. § 15A-1415(c). Such a motion, based on evidence which these Defendants hid, would have been successful and would have exonerated Mr. Carmon and freed him from prison.

139.  Defendants Greene and Armaos were, at all relevant times, aware of Mr. Carmon's innocence and of his persistent and truthful denial of any involvement in the alleged robbery at the Fresh Way store. These Defendants were also aware of efforts on behalf of

17

Mr. Carmon and others acting on his behalf to uncover evidence necessary to prove Mr. Carmon's innocence. These Defendants willfully interfered with Mr. Carmon's constitutional rights by continuing to deny him and those acting on his behalf access to evidence which would exonerate Mr. Carmon.

140. Mr. Carmon's family hired an investigator to pursue his claims of innocence and although she sought the criminal file from the WPD she was not provided with the finger or palm print lifts that would have exonerated Mr. Carmon.

141. It is an affront to the proper administration of justice that the first time any lawyer representing Mr. Carmon learned that there were crime-scene fingerprints obtained and that none matched Mr. Carmon was 28 years after his conviction. That miscarriage of justice violated Mr. Carmon's constitutional rights and is attributable both to the misconduct of the Winterville police who caused his wrongful arrest and also the unlawful municipal policies and customs of the Town of Winterville.

142. Because of Defendants' misconduct, Mr. Carmon could not file a properly supported motion for appropriate relief based on new evidence under N.C. Gen. Stat. § 15A-1415(c) or otherwise obtain meaningful access to the courts and prove his innocence.

143. The wrongful acts and omissions that caused Mr. Carmon's wrongful conviction and incarceration were carried out pursuant to the municipal defendant's policy and practice of not requiring fingerprint evidence to be turned over to the District Attorney or defense counsel.

144. This custom and practice of the Town of Winterville proximately and directly caused Mr. Carmon's continued wrongful incarceration by systematically denying him and his representatives evidence needed to prove his innocence.

18

145. Defendants' actions and omissions directly and proximately deprived Mr. Carmon of his rights under the First and Fourteenth Amendments by unlawfully interfering with his right of access to the courts and needlessly extended his wrongful incarceration. As a result of Defendants' misconduct, Mr. Carmon was wrongfully imprisoned for 8 years, and suffered physical, emotional, and pecuniary injuries as described in this Complaint and to be proved through discovery and at trial.

**FOURTH CLAIM FOR RELIEF**
**Prosecution without Probable Cause and Fabrication of False Evidence in Violation of the Fourth Amendment under 42 U.S.C § 1983**

146. Plaintiff Darron Carmon repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

147. Officers Greene and Armaos are sued under this claim in their individual capacities.

148. Officers Greene and Armaos are sued for violating Mr. Carmon's rights under the Fourth Amendment and are liable for damages under 42 U.S.C § 1983.

149. Officers Greene and Armaos, despite knowing that probable cause did not exist to arrest and prosecute Mr. Carmon, intentionally, recklessly and with malice caused Mr. Carmon to be arrested, held on bail and prosecuted.

150. Defendants knew that Mr. Thompson had identified the alleged robber as someone of a significantly different height and hair style than Mr. Carmon. No other evidence linked Mr. Carmon to the crime.

151. Defendants intentionally and in bad faith fabricated inculpatory evidence, including but not limited to fabricating statements made by Mr. Thompson.

19

152. Defendants intentionally and unlawfully provided false or misleading information and made material omissions in their statements to the District Attorney and the Court.

153. As a direct and proximate result of the Defendants' acts, Mr. Carmon was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described above.

## FIFTH CLAIM FOR RELIEF
### Negligence

154. Plaintiff Darron Carmon repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

155. Officers Greene and Armaos are sued under this claim in their official capacities.

156. The Town of Winterville, on information and belief, has waives immunity for this claim on behalf of the Town and its officers acting in their official capacities.

157. Defendants had the following duties:

    a. to ensure that citizens were not wrongfully arrested and charged with crimes they did not commit;

    b. to ensure that only reliable sources of evidence were used in criminal prosecutions;

    c. to exercise reasonable care when engaging in criminal investigations;

    d. to disclose exculpatory material including impeachment information; and

    e. to include accurate information in reports describing evidence in their possession;

158. Defendants were negligent and breached duties owed to Mr. Carmon in the following respects:

    a. Defendants wrongfully caused Mr. Carmon to be arrested and charged with crimes he did not commit;

    b. Defendants failed to disclose exculpatory evidence and failed to use this evidence to conduct an adequate investigation;

20

c. Defendants failed to submit crucial physical evidence (the finger and palm prints taken from the alleged scene of the crime) for testing;

d. Defendants failed to provide accurate or truthful information in their investigatory reports related to Mr. Carmon;

e. Defendants failed to thoroughly investigate their sole eyewitness, Robert Thompson; and

f. In other respects, to be proved through discovery and at trial.

159. As a direct and proximate result of Defendants' negligence, Mr. Carmon was wrongfully arrested, prosecuted, convicted, and incarcerated, and Mr. Carmon suffered physical, emotional, and pecuniary damages.

## SIXTH CLAIM FOR RELIEF
### Failure to Intervene in Violation of the Fourth and Fourteenth Amendment Under 42 U.S.C § 1983

160. Plaintiff Darron Carmon repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

161. Officer Armaos is sued under this claim in his individual capacities.

162. Officer Armaos is sued for violating Mr. Carmon's rights under the Fourth Amendment and is liable for damages under 42 U.S.C § 1983.

163. Officer Armaos was present for and observed the aforementioned unlawful conduct and had a duty and opportunity to intervene and prevent such conduct but failed to intervene.

164. Accordingly, Officer Armaos, by failing to intervene, violated Mr. Carmon's rights under the Fourth and Fourteenth Amendments.

165. Officer Armaos knew that Mr. Thompson had described an individual who was taller and of a different hair style than Mr. Carmon.

166. Officer Armaos knew that Officer Greene fabricated evidence in his investigatory report related to Mr. Thompson's identification.

167. Officer Armaos knew that Officer Greene failed to provide fingerprints collected from the scene of the crime to the Pitt DA.

168. Officer Armaos failed to intervene in the false arrest and continued prosecution of Mr. Carmon despite knowing that the charges against Mr. Carmon were erroneous and that Mr. Carmon's arrest occurred without probable cause.

169. As a direct and proximate result of this unlawful conduct, Mr. Carmon sustained the injuries and damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Darron Carmon prays that the Court enter judgment in his favor and order relief as follows:

A. Compensatory damages against all Defendants, jointly and severally;

B. Punitive damages against the individual Defendants, jointly and severally;

C. Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

D. Any other and further relief the Court deems equitable and just.

## VIII.  JURY DEMAND

Plaintiff Darron Carmon respectfully demands a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this the 7th day of March 2023.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC

22

119 E. Main Street
Durham, NC 27701
Telephone: (919) 451-9216

/s/ Emily D. Gladden
Emily D. Gladden (NCSB #: 49224)
Email: Egladden@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
407 N. Person Street
Raleigh, NC 27601
Telephone: (919) 720-4201
Facsimile: (919) 400-4516

/s/ Nichad Davis
Nichad Davis (NCSB #: 56297)
Email: ndavis@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701

*Counsel for Plaintiff Darron Carmon*